CLOPTON, J.
The will of Philip E). Vass of Halifax county, dated on the 8th of August, 1831, was by the County Court of that county, made on the 22nd of October, 1832, ordered to be recorded, which order was, upon appeal to the Circuit Court, affirmed on the 15th of April, 1833. The testator, by the 12th clause of his will, emancipated his servants Mary and Jacob, and all his interest in the undivided servants belonging to his father’s estate; and by the same clause he provided that the sum of $2,000 should be appropriated, to purchase, in the State of North Carolina, a tract of land of prescribed description and quality; that houses of a particular description should be built, if there were none on the land sufficient for his servants to occupy, and that his negroes should be furnished with certain articles of personal property and provisions. He also declares, that none of his servants emancipated by him should ever have it in their power to dispose of the said land which may be bought for them, by gift or any other way whatsoever, but to go to them and their families *in succession, and that when they and their increase on the female side be extinct, that the land, &c. be sold and be subject to the disposition in general terms of his will. By the 13th clause he appoints James Young (one of the appellants,) to take possession of his servants and to carry out the purposes of his will, and for performing these services he directs by the 14th clause that he should be paid $300, if so much should remain out of the sum of $2,000 appropriated, and if not, to be paid out of his estate. A controversy arose whether the slaves were emancipated, which was settled by the final decree of the Circuit Superior Court of Halifax at the April term, 1841, which ascertained and decreed that the plaintiffs in that suit, to wit, Jacob, Mary, Sam, Meriwether, Patty and Matilda were emancipated.
In May, 1843, James Young and five of the emancipated negroes (one of them, Sam, having died in the meantime,) exhibited their bill in the Circuit Court of Halifax, against the executor, claiming the benefit of the $2,000 appropriated to their use by the will, and the interest thereon accrued after a reasonable time from the death of the testator. In September, 1843, the executor filed his answer, in which he submits the question, whether, as the laws of North Carolina did not permit the settlement of the colored plaintiffs in that State, in that event they were entitled to the money aforesaid at all under the will; and the laws of North Carolina prohibiting such settlement, are in the record. In June, 1850, the Circuit Court “being of opinion that, as by the laws of North Carolina, emancipated negroes are not permitted to migrate into that State, the plaintiffs had no right to the said sum of $2,000,” dismissed the bill.
To this decree an appeal was allowed, and the first question to be decided is, have the plaintiffs lost all right to the $2,000, because the laws of North Carolina forbid its appropriation in the particular manner prescribed in the will? It seems clear that the emancipation *of the colored plaintiffs, and their subsequent comfort and support were the primary and peculiar objects of the testator’s bounty, and although it appears from the will that he was an ignorant man, yet he seems to have known that they could not remain in Virginia without forfeiting their freedom, and ignorant of the laws of North Carolina, he provided for their removal and settlement in that State. This, I think, must be regarded as only secondary and ancillary to the other, as indicating only the place where and the manner in which the boon of freedom and comfort was to be enjoyed; and if this purpose has been defeated by an exercise of sovereign power by the State of North Carolina, over which they could have no control, they should not be deprived of all benefit from the provision; for it cannot be regarded as a condition precedent upon the performance of which by them their right was to accrue. The acts were tobe done by others, and their performance has become illegal, and therefore prevented, not by any act or omission on the part of the beneficiaries. I think it settled, that conditions are to be construed strictly and never extended beyond what is made necessary by the context of the will, but that they should be regarded only 'as a limitation upon the manner of using the legacy, in favor of the primary and general intention of the testator, and the legacy will not be defeated, although every particular circumstance directed by the testator to attend its use should not take place. When a legacy is given to answer a particular purpose, which becomes impossible, but from no *515 fault of the legatee, he will nevertheless be entitled; and for these principles I refer to Roper on Legacies, pages 479, 646, 751, and the cases there cited, and Rowlett v. Rowlett, 5 Leigh, 20. I am, therefore, of opinion, that although the legacy cannot be appropriated precisely in the manner directed by the will, the legatees are entitled to have it applied in the manner most beneficial to them, and that it should bear interest after a reasonable time from the testator’s death.
*The second question relates to the interest of Sam, who has died since the testator. I am of opinion that the legacy should be regarded as made to a class. The testator directs his “two servants Mary and Jacob, and” his “interest in the undivided servants belonging to” his “father’s estate to be emancipated.” He gives no separate legacy to them as individuals, nor are any means furnished by which the aliquot shares can be ascertained so as to vest in each a specific sum separate and distinct from the others. He does not direct the legacy to be appropriated to the use of the legatees in equal shares, but is to be appropriated for their joint use, and but for the impediment interposed by the law of North Carolina, this would have been literally carried out. If a legacy be given to several as a class and not in their individual character, as for instance to executors in their representative character, and one die in the life-time of the testator, the legacy will not lapse, but go to the survivors; and so in anv case of a legacy to several as a class, if one, from death or any other cause, should be incapable of taking, before the legacy is payable, or has been paid, the survivors take the whole, upon the principle that each is a taker of the whole, but not solely; for the whole is devised to all, and not a part to each. See Roper on Legacies, pages 483, 1734, and the cases there cited.
As to the proper disposition of the legacy, I am of opinion, that the whole, with the interest accrued, should be paid to the appellant James Young, (if he consents to act,) with instructions to him to retain as compensation for his trouble, according to the will, the sum of $300, with its interest ; that out of the residue, he pay the expenses of transporting the emancipated negroes to such free State as they may be permitted to go to, or to the port of embarkation for the colony of Liberia, as they may elect to go to the one or the other, and divide the remainder among them.
THOMPSON, J.
I regret that the able _ judge, whose decision is brought under our review by this appeal, has *not favored us with an opinion, setting forth the reasons or grounds of his decree; because, had he done so, it cannot be doubted, from his acknowledged judicial eminence, they would have been entitled to high respect, and calculated to enlighten us in our deliberations, and to persuade, if they had failed to convince, our judgments. Without the benefit, then, or the lights which he doubtless could and would have shed on the subject, in proceeding to express my views, I feel warranted in laying it down as a clear proposition, upon the principles of reason, equity and justice, if there were no authorities to guide, that where a legacy is given to a person for a particular purpose, which it becomes impossible to appropriate to that purpose, without any fault or demerit on the part of the legatee, he ought, nevertheless, to be entitled to the legacy, and that the purposes for which it was given, expressed in the will, ought not to operate as. condition to the bequest. And upon this very plain and obvious principle, that the fund being designed for and appropriated to the benefit and advantage of the legatee, the mode in which it shall be applied or enjoyed is but a secondary object and consideration, and ought not to be held as entering into the substance of, or constituting a qualification or condition of the gift. And so we find, in this case, (as we shall very generally, if not universally find,) the rules of law or legal construction and reason concurring. That point has been so ruled and settled by authority in the cases of Barlow v. Grant, 1 Vern. 255; Neville v. Neville, 2 Ves. 431; Burton v. Cooke, 5 Ves. 462, cited in 1 Roper on Legacies, 430, 2 Lomax Ex. 73, 74, and cited and approved by our own Court of Appeals in Rowlett v. Rowlett, 5 Leigh, 20; and as it is not to be presumed that the judge in the court below was unapprised of these authorities, or, being cognizant of them, disapproved and intended to disregard or ■ over-rule them, I must conclude, that he proceeded either upon the ground that they were distinguishable from the case under consideration for the same or reasons similar to *those assigned in the argument of the appellee’s counsel, or upon the principle established by another, class of cases; that is to say, that this will, instead of giving a legacy of money or other thing directly to the legatee, for a specified purpose, created or interposed an executory trust merely in their favor, of such a nature, as that, at the date of the will or the death of testator, it was, or by matter ex post facto, (the disabling or prohibitory and penal legislation of North Carolina, in reference to free persons of color,) because incapable of execution in the manner prescribed by the will, and that therefore, as in case of bequests, void by statute, or because of the incapacity of the legatee to take, for vagueness and uncertainty, or for any other cause, the trust wholly failed, and the property, or money given to invest in property, remained un-disposed of and belonged to the next of kin or distributees, in virtue of a resulting-trust. See Morice v. Bishop of Durham, 9 Ves. 399, 10 Ves. 522; James v. Allen, 3 Meriv. 17; Ommaney v. Butler, 2 Turn. 260; Vezy v. Jameson, 1 Sim. & Stu. 69, and Fowler v. Garlike, 1 Rus. & M. 232. cited in 2 Lomax Ex. 4. , But in this case, *516 throwing' out of view, as entitled to not the least' consideration upon the question in hand, because clearly illegal and void, the abortive attempt to impose limitations upon the estate or provision made for the settlement-in North Carolina, in the form of restraints upon the power of alienation, or in ,sc.r.e.g.tion of a perpetuity, and taking into consideration the fact, that both the beneficiaries and the provision or property intended for them were certain and definite, and the failure of execution- proceeded solely from impediment interposed by the laws, of North Carolina, without any, the least fault, delinquency or demerit on the part of the intended beneficiaries, I cannot see how the interposition of a trust, if one was created or interposed bjr the will, can take the case out of the reason or principles of the class of cases first cited.
The only substantial difference I can perceive in the "two classes of cases is, that in the first, where there is a direct bequest of money or property for a specified purpose, and it becomes impossible to carry out that purpose, the necessary consequence is to give the legatee the money or property to be applied or enjoyed in such' other manner as he can and may choose; whilst in this case, which X presume was assimilated to the second class of cases, the question may arise, whether the legatees should take the equivalent of the provision given them by the will, in money, or the will should be executed upon the cy pres principle, so as to approximate as nearly as practicable the manner of appropriation and mode of enjoyment which it prescribes. - If the doctrine of cy pres be not a principle of our system of jurisprudence, applicable to the same extent here as in England, and if even, as a distinct and independent principle, not technically applicable at all, I see no reason why we should not borrow analogies from it in carrying out or approximating as near as practicable the will of a testator in such a case as this; or that, at Last, upon principles of public policy, as well as out of a humane regard to the legatees themselves, why we should not, before giving them the legacy, put them to their election, whether they will leave the Commonwealth and go to some one of the United States whose laws permit their immigration, or to the colony or commonwealth of Liberia; for it ought not to be considered by this court a sup-posable case that they would elect to remain in Virginia, in defiance of its penal laws, and expose themselves to the consequence of a forfeiture of freedom, and, with it, any legacy they might have received, and thereby defeat the plain and manifést intent of the testator, in both emEincj'pating and providing for them; but if they, or any of them, should elect to remain and-take the hazard, they should be detlied, participation in the fund set apart as ¿"provision for them, and those only, who elect to remove, should take the whole. If they elect to remove to some of the States, the fund should be employed or applied, *as near as may be, according to the provisions of the will, for their use and benefit; and if they elect Liberia, it should be paid over after defraying all necessary' expenses, including extra costs of suit in County and Circuit Court, or Court of Appeals, and those of removal to the place of embarkation, to the proper officer of the Colonization Society, for their use and benefit, upon their removal thither, or embarkation for that country.
I am of opinion, that the legacy carries interest from and after the expiration of one year from, the death of the testator, and that the sum to be decreed against Vass’ executor, the appellee, is $2,000, with interest from that date, and that no account is necessary, the executor having confessed assets in his answer; and that of this sum, $1,700, with its interest, when paid to the plaintiff Young, the trustee or. agent appointed by the will to apply, disburse and invest for the benefit of the emancipated slaves, must be so applied, and the residue of $300, with so much of its interest as may be deemed proper, belongs to and is to be retained by said Young for his compensation in consideration of his services in the premises, as provided in the will.
I am further of opinion, that on consideration of the peculiar provisions of this will, it being most apparent, that it was the manifest intention of the testator to provide for them, as a class, by the appropriation of a sum to be invested for their joint benefit and enjoyment, and in a manner which made the use and enjoyment necessarily joint and inseparable; which, had it been practicable, (and so it would have been, but for the prohibitory laws of North Carolina,) would have 'rendered the death of Sam, whether before or after the testator, no cause for diminishing the amount or joint investment or application of the whole for the benefit of the survivors, and although he survived the testator, and thereby, as a general rule, acquired a vested and transmissible interest, his death ought not to diminish the fund or provision given by our decision to the legatees in lieu of *that rendered incapable of execution by the statute of North Carolina ; but that the survivors, who elect to leave the state, should take the whole in the same way as if he had died in the lifetime of testator, or in the same way as if the provision had been capable of execution in North Carolina, because, by so holding, we are carrying out the manifest, intention of the testator. Under this decision, his children, if any he have, and capable of taking a legacy, will in all probability be found among those to whom the decision gives it, and will participate in common with the rest; and if they be either bond or free, and not of those emancipated or their descendants, and therefore not entitled to participate in the benefits of the bequest, they certainly cannot claim to come within the contemplation of the will, and therefore cannot complain of their *517 exclusion as a violation of the intention of the testator. I am, therefore, for reversing the decree of the court below with costs of appeal, and remanding the cause for further proceedings to be had therein, with instructions to that court to proceed to final decree in conformity with the principles settled in the foregoing opinion.
The decree of the court was as follows:
It is therefore decreed and ordered, that the said decree of the late Circuit Superior Court of haw and Chancery for the county of Halifax, be reversed and annulled, and that the appellee do pay unto the appellants their costs by them expended in the prosecution of their appeal aforesaid here, and the cause is remanded to the Circuit Court for the county of Halifax, for further proceedings to be had therein, with instructions to that court to cause the election of the surviving emancipated slaves to be taken by commissioners for that purpose appointed by said court, as to whether they will be removed to and settled in some of the States of the Union, or emigrate from the United States and settle in the colony or commonwealth of lyiberia; and that upon the return of the report of such election, *Vass’ executor, who has confessed assets, be decreed to pay to the appellee, Young, or such other person as may be appointed or substituted in his room and stead, in the event of his death, or inability or refusal to act, the sum of $2,000 with interest, from and after the expiration of twelve months from date of testator’s death, and the costs of the suit in the Circuit Court, upon his entering into bond with sufficient security in the penalty of $5,000, and conditioned for the due appropriation thereof, and accountability therefor under that or any subsequent order or decree of the court; seventeen hundred dollars of which amount with its interest, and so much of the interest accrued on the remaining three hundred, as the court may direct, to be employed by such agent, trustee, or commissioner, as the case may be, for the use and benefit of the legatees, or such of them as may elect to leave the State, in defraying the expenses of their removal to the place of their election, and the residue paid to them, according to their respective rights and interests therein, or invested, settled upon, or secured to them according, as near as maybe, to the provisions of the will, and the remaining $300, with so much of its interest as the court may deem reasonable, to be retained by the said Young or other agent, trustee or commissioner, as the case may be, for his compensation, according to the provisions of the will; and in fine, in all things to conform to the opinion of this court, settling the principles of the cause, and in matters of detail not embraced in the foregoing specific instructions, to proceed according to a sound discretion, and to the usages, practice, and principles of a court of equity, applicable to such a case. A refunding bond has not been required by the decree of this court, because of the character of the legacy and the legatees, and the admission of assets by the executor in his answer in 1843; nevertheless, a discretion is left to the judge of the court below, if, upon en-quiry, it shall seem to him necessarj' and proper for the security of the executor against debts of the testator which have appeared '*since the filing of his answer, or which may hereafter appear, and it shall not be waived by the executor, to require of the appellants a refunding bond, or some bond of indemnity, with sufficient security, to be executed-by them, or some one for them, unless and until they shall entitle themselves to a dispensation from such requirement, by proceeding to acquire the right to such dispensation, according to the act of Assembly in such case made and provided. All which is ordered to be certified, &c., &c.
GIEMER, J.
I am of opinion the Circuit Court erred in dismissing the bill of the plaintiff, and that the said court should have decreed that the executor of Philip E. Vass (he having in his answer admitted assets,) pay to James Young, the trustee named in the will, or if he refused to act, to such other trustee as might be appointed in his stead, the sum of two thousand dollars, with interest from twelve months after the death of the testator, requiring of said trustee bond with good security, for the faithful discharge of his duty, -to be applied by said trustee, according to the provisions of the will of the testator, in purchasing land in any one of the States of the Union, for the benefit of the plaintiffs, which may be most advantageous and desirable for them, it being my opinion, founded on the authorities cited by Judge Thompson in his opinion, that the intention of the testator should not be entirely defeated by the prohibition of the State of North Carolina, against immigration into its territory by free negroes.
I am also of opinion, that the interest of Sam, one of the manumitted slaves.who has died since the testator, survived to Ihe others, it being the intention of the testator to provide for them as a class in the mode pointed out in his will, and not to distribute the fund among them in shares; and for this reason, and because I am of opinion that a division of the said sum of money among the plaintiffs, would defeat instead of carry *out the intention of the testator, I do not concur in that part of the opinion of the court, which directs the money (in one contingency,) to be divided among the plaintiffs.' 1 am for reversing the decree with costs, and for sending the cause back, to be further proceeded in in the Circuit Court.